UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-037 (JDB) |
| v. | : | |
| GRAHAM MICHAEL, | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant Graham Michael. Defendant pled guilty to committing fraud against his former employer, the Embassy of Papua New Guinea (hereinafter "the Embassy"). As is discussed below and pursuant to the plea agreement, the government does not oppose a probationary sentence with a condition of six months home confinement. Plea Letter, January 25, 2007, at p. 2, ¶ 4. Furthermore, the government requests that the Court order defendant, consistent with the plea agreement, to make restitution of $70,052 to the Embassy. *Id.*, ¶ 3.

**I. FACTUAL BACKGROUND**

On February 16, 2007, the government filed a two-count Information charging defendant, in Count One, with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and, in Count Two, fraud in the first degree, in violation of 22 D.C. Code §§ 3221(a), 3222(a)(1) and 1805. Presentence Investigation Report (hereinafter "PSR"), at p. 3, ¶ 1. On March 12, 2007, defendant pled guilty to Count Two of the Information. *Id.*, ¶ 2. Sentencing is now set before the Court on May 18, 2007, at 9:45 a.m. *Id.*, at p. 1. The government has agreed, per the plea agreement, to move to dismiss Count One at the time of sentencing. *Id.*, at p. 3, ¶ 4.

According to the statement of offense filed in this matter and the PSR, at pp. 4-5, ¶ 6-13, both of which were agreed to by the defendant, *id.*, at p. 6, ¶ 17, at all relevant times defendant was employed as the Charge D'Affair/Acting Ambassador, and Counselor for approximately six and a half years for the Embassy. Defendant tendered his resignation from the Embassy effective April 30, 2004, with the understanding he would return to employment at the Embassy Headquarters in Papua New Guinea, which he did not do, and he was thereafter officially terminated on December 7, 2004.

During his tenure with the Embassy, defendant engaged in a number of fraudulent transactions against it in relation to defendant's alleged plans to repatriate back to Papua New Guinea, with which plans he never actually carried through. The fraudulent transactions resulted in a loss to the Embassy of approximately $70,052.

<div style="text-align:center">Fraudulent Transactions</div>

Sale of Residence

On or about April 1, 2002, the Embassy sold the residence it owned, and in which defendant was living in Washington, D.C., for $530,000. The Embassy sold the property on its own without using a real estate company. Shortly after the closing, defendant approached the Embassy Administrative Officer (hereinafter "AO") and asked him to insert a $26,000 broker fee into the HUD-1 form. The AO did so on or about April 22, 2002. Thereafter, on or about June 19, 2002, the AO sent by telefax and Federal Express copies of the HUD-1 form and related sale documents from Washington, D.C., to the Embassy Headquarters in Papua New Guinea.

On or about June 3, 2002, a couple of weeks after the AO changed the HUD-1 form, defendant requested the AO to write him a check for $25,900 from the Embassy's Riggs Bank

account where the proceeds of the sale had been deposited. Defendant told the AO that the funds were to be used for his repatriation to Papua New Guinea. The AO did so, although this was not the normal procedure for obtaining repatriation funds. Several days later, defendant gave the AO a $5,000 check for his assistance.

### Colonial Moving & Storage

In or about July of 2002, defendant obtained permission from Embassy Headquarters in Papua New Guinea to send some of his possessions back to Papua New Guinea. Three quotes were obtained to pay for the shipping, which quotes were sent to Headquarters in Papua New Guinea for approval. After obtaining approval, defendant told the AO he was going to pay for the shipping himself.

On or about July 29, 2002, defendant gave the AO a copy of a personal check for $20,750, from defendant to Colonial Moving & Storage Co. Defendant told the AO that he paid the movers himself and wanted to be reimbursed by the Embassy. On or about August 8, 2002, the AO gave defendant an Embassy check for $20,750 to pay the reimbursement. Colonial Moving & Storage Co. went out of business in July of 2002. It never shipped defendant's items and, accordingly, did not receive a payment of $20,750 from defendant to do so.

### Chester Courier Consultants, LLC

In or about March of 2004, the AO received three quotes from couriers to move defendant's personal effects back to Papua New Guinea. The lowest quote was from Chester Courier Consultants, LLC (hereinafter "CCC"), and was given to the AO by defendant. On or about March 25, 2004, the AO drafted a check from the Embassy to CCC for $23,402 and gave the check to defendant to provide to CCC.

Investigation in this matter showed that defendant's goods were never shipped back to Papua New Guinea. Further, the investigation showed that CCC was a Limited Liability Corporation set up by defendant in West Virginia on or about March 15, 2004, and dissolved by defendant on or about June 1, 2004. The name on the signature line on the quote sheet was determined to be a neighbor of defendant in Bunker Hill, West Virginia, but the neighbor denied knowing defendant or working for CCC. The business address on the quote sheet was an address in Silver Spring, Maryland, that did not exist. The telephone number on the quote was a West Virginia prefix, and appeared to be a number to defendant's business in West Virginia.

## II. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below numbered as they are in Section 3553(a).

(1) The Court should consider the nature and circumstances of the offense. Here, the offense was a blatant misuse of position by defendant for his personal financial gain. The offense negatively effected the Embassy and the government of Papua New Guinea, as well as involved the AO in his schemes. The negative impact on the Embassy is described in the correspondence from Ambassador Evan J. Paki, which is attached as an exhibit. *See also* PSR, at pp. 5-6, ¶ 14.

The Court should also consider the history and characteristics of the defendant. In this matter, defendant has no prior criminal record, PSR, at p.6, ¶¶ 19-20, and a consistent employment record. *Id.*, at pp. 10-11, ¶¶ 48-52.

(2) The Court should also consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; (B) to afford adequate deterrence; (C) to protect the pubic; and (D) to provide defendant with appropriate education or vocational training.  In this matter, as discussed above, the offense was serious and requires adequate punishment.  The sentence should also be of such a nature so as to deter others from engaging in similar conduct and to protect the public from other criminal acts by defendant.  As to the final consideration, defendant does not appear to need further education or vocational training.

(3) The Court should consider the kinds of sentences available.  The maximum term of imprisonment for this offense is 10 years, with a term of supervised release of not more than 3 years, but the defendant, alternatively, is eligible for up to five years of probation. PSR, at pp. 13-14, ¶¶ 60, 64, and 65.

(4) The Court should also consider the sentencing range established by the United States Sentencing Guidelines (hereinafter "USSG").  The USSG are *not* applicable in this case, however, in that the defendant pleaded guilty to a violation of the District of Columbia Criminal Code. PSR, at p. 6, ¶ 18.  Under the voluntary District of Columbia Sentencing Guidelines, defendant's offense level for Count Two is in Group 9 and his criminal history score is 0, which puts him in criminal history category A.  *Id.*, at p. 7, ¶ 21, and p. 13, ¶ 61.  If the Court determines that a sentence of imprisonment is warranted, the relevant voluntary guidelines range is 1 to 12 months.  *Id.*  Under the District of Columbia Sentencing Guidelines, defendant is eligible for a prison sentence, a short split sentence,[1] or probation.  *Id.*, at p. 13, ¶ 62.[2]

---

[1] A short split sentence is one in which the amount of prison time initially served on the sentence by a defendant is six months or less.

[2] If the defendant had pleaded guilty to Count One, the PSR lists his potential USSG sentence range as 18-24 months, in Zone D.  PSR, at p. 14, para. 63.  This offense level of 15 does not

(5) The Court should consider any pertinent policy statement issued by the Sentencing Commission. The government is not aware of any pertinent statements beyond those captured in the applicable D.C. Sentencing Guidelines range, which is discussed above.

(6) Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records. Here, a D.C. guidelines sentence would help prevent such disparities between defendant and similar defendants.

(7) Finally, the Court should consider the need to provide restitution. In this matter, an appropriate restitution order would require defendant to make restitution to the Embassy of $70,052. PSR, at p. 4, ¶ 7; at p. 16, ¶ 74.

### III. RECOMMENDATION

Defendant, using his position as the Embassy, stole a significant amount of money from the Embassy. This theft occurred over a period of time (mid-2002 to mid-2004) and put the AO at risk. This conduct, with its resulting harm to the Embassy is serious conduct that needs to be punished appropriately.

At the same time, defendant quickly admitted his guilt after being contacted by the government in this matter and agreed to make restitution. Moreover, although defendant is forty-two years old, he has no prior criminal convictions.

---

include a two-level reduction for acceptance of responsibility (Base Offense Level of 7, plus 8 levels for more than $70,000, equals 15). With a two-level reduction, an offense level of 13 would result in a sentencing range of 12-18 months in Zone D.

Accordingly, per the plea agreement, the government does not oppose a probationary sentence with a condition of six month's home confinement.[3]  Furthermore, as part of the plea, defendant agreed to make restitution to the victim in this matter, that is, the Embassy.  Plea Letter, at p. 2, ¶ 3; *see* PSR, at p. 3, ¶ 2, and p. 16, ¶ 74.  Therefore, the government respectfully requests that the Court order the defendant to pay restitution to the Embassy.[4]

                              Respectfully Submitted,

                              JEFFREY A. TAYLOR
                              UNITED STATES ATTORNEY
                              D.C. Bar Number 498610

By:        / s /
                              DANIEL P. BUTLER
                              D.C. Bar #417718
                              Assistant U.S. Attorney
                              555 4th Street, N.W., Room 5231
                              Washington, D.C. 20530
                              (202) 353-9431
                              Daniel.Butler@usdoj.gov

---

[3] As noted in the PSR, home confinement, which is enforced in this jurisdiction by electronic monitoring, may restrict defendant in his employment as a truck driver.  PSR, at p. 3, n.1.  That may be so, but there are negative consequences from criminal behavior and defendant has already received a benefit by not being required to plead guilty to the federal charge, with the resulting application of the federal sentencing guidelines.  *See* footnote 2 *supra*.

[4] In the plea letter, defendant acknowledged that his guilty plea may subject him to detention, deportation, and other sanctions at the direction of the United States Immigration and Customs Enforcement.  Plea Letter, at pp. 1-2, para. 1; *see* PSR, at p. 3, para. 3.



TELEPHONE: (202) 745-3680
FAX: (202) 745-3679
EMAIL: epaki@pngembassy.org
WEB SITE: www.pngembassy.org

1779 MASSACHUSETTS AVENUE, N.W.
SUITE 805
WASHINGTON, D.C. 20036

### EMBASSY OF PAPUA NEW GUINEA

*Office of the Ambassador*

---

April 23, 2007

The Honorable John D. Bates
United States District Court
  for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Your Honor,

**Re:  United States v. Graham Michael, Crim. No. 07-037 JDB**

The Papua New Guinea Government ("PNG Government") has directed me to write you regarding the sentencing of Mr. Graham Michael, a former Acting Ambassador to the United States. *See* Exhibit A, ¶4. I trust that you will consider the dramatic impact Mr. Michael's criminal acts have had on the PNG Government and its people when he appears before you for sentencing on May 18, 2007.

As you know, Mr. Michael pled guilty to stealing nearly $100,000 from the PNG Government through various fraudulent schemes. The PNG Government requests that the Court: (i) impose a term of imprisonment that recognizes the serious nature of the fraud; and (ii) order Mr. Michael to make full restitution to the PNG Government as detailed in the attached Declaration of Victim Losses. *See* Exhibit B.

The PNG Government believes that Mr. Michael's crimes are extremely serious. *See* Exhibit A, ¶5. He engaged in a long-running, systematic scheme to defraud the Government and the citizens of PNG. He stole nearly $100,000, money that rightfully belongs to the people of PNG.

This Court has no doubt imposed sentences in larger financial fraud cases. We respectfully submit, however, that the losses here are extraordinary given our nation's relative economic conditions:

- The gross domestic product per capita income in PNG is $855 (U.S.). Seventy percent (70%) of the population lives in poverty. The funds stolen here thus represent *the total annual income of roughly 100 PNG citizens*. See Exhibit A, ¶7.

- Mr. Michael's fraud deprived the PNG Government of desperately needed funds for healthcare, education and other essential social services. The money Mr. Michael stole could have supported *over 15 primary schools* and *more than 20 rural health centers* in PNG for a year.

- Mr. Michael's fraud similarly undermined the PNG Government's diplomatic missions. The money stolen by Mr. Michael could have paid the salary of a senior PNG foreign service officer for *ten years*. See Exhibit A, ¶7. Much closer to home, at least for the embassy, the amount represents approximately *one third* of the Embassy's annual funding.

In a developing nation such as ours, every dollar counts, and every dollar makes a difference in the life of our citizens. We hope that this background helps the Court to appreciate the significant impact Mr. Michael's fraud has had on the PNG Government and its people.

Aside from the financial impact, Mr. Michael's conduct breached basic duties of fairness and loyalty. *See Id.* ¶8. He repeatedly abused his position as Acting Ambassador to the United States—an important posting and a position of great trust and authority—to obtain money that he used for his own personal benefit. Diplomatic postings, no matter how prestigious or important, do not authorize self-dealing, especially of a intimately personal nature. A sentence of imprisonment is appropriate and necessary to demonstrate to public officials and diplomats—particularly PNG officials—that they may not put their own personal interest ahead of the collective interests of the people and governments whose interests they serve (or are supposed to be serving).

To make matters worse, Mr. Michael has not demonstrated any genuine remorse for his criminal conduct. Through its Embassy, the PNG Government has sought restitution from Mr. Michael for nearly three years. Mr. Michael has consistently denied responsibility for his misconduct and instead made false allegations about Embassy officials. He has refused to engage in any good-faith discussions about repaying the money he took by fraud. Most recently, for example, he has completely ignored a written settlement proposal sent to him in the wake of his guilty plea. *See* Exhibit B, ¶6. Similarly, Mr. Michael has neither apologized for nor retracted the false allegations he made against the PNG Government officials who discovered his fraudulent conduct, even thought the Government, after due investigation, has found them to be false. *See* Exhibit C.

We appreciate the Court's time and consideration. We respectfully request that the Court take into account the serious consequences and impact of Mr. Michael's crimes on the PNG Government and its citizens when imposing sentence on him.

Respectfully yours,

Evan J. Paki
Ambassador



# DEPARTMENT OF FOREIGN AFFAIRS & TRADE

*Office of the Secretary*

**TOP PRIORITY**

16th April 2007

H E Mr. Evan Paki
Ambassador
Embassy of Papua New Guinea
1779 Massachusetts Avenue, NW
Suite 805, Washington, DC 20036
United States of America

Dear Ambassador Paki,

**Re:    United States v. Graham Michael, Crim. No. 07-037 JDB**

We refer to Mr. Graham Michael's guilty plea to two counts of fraud in the U.S. District Court for the District of Columbia (the "Court") on March 12, 2007. We understand that Mr. Michael (the "Defendant") will be sentenced on 18 May 2007.

We appreciate what our Embassy in Washington DC, under your leadership (and acting on our instructions), has done (including the legal proceedings and other appropriate steps taken) to (a) seek a full recovery of the funds that had been defrauded out of the Embassy or misappropriated or improperly received by the Defendant, including a full recovery of all legal costs incurred by the Embassy; and (b) ensure that justice is served in this case, following the Defendant's criminal guilty plea last month.

While we understand that the Embassy is taking all appropriate steps towards that end in light of his forthcoming sentencing, the Government of Papua New Guinea (through this department) hereby further instructs the Embassy that the following appropriate steps and all other related steps should be taken in this case (subject of course to the advice of the Embassy's U.S. lawyer):

1.    Propose to the Defendant a settlement offer which should include the following: (a) the Defendant's agreeing to pay full restitution and ensure that the Embassy recovers the sum of about US$120,000 that Mr. Michael had defrauded out of the Embassy and/or improperly received and applied to his own personal use, including all the legal costs incurred to date; the Embassy would not have incurred the legal costs and put us through two years of inconveniences if the Defendant had not acted illegally, inappropriately and unethically; and (b) a written personal apology from the Defendant to the Embassy and this Department

P. O. BOX 422, WAIGANI, NCD, PAPUA NEW GUINEA TELEPHONE: (675) 301 4121, FACSIMILE: (675) 323 1011, 325 4886
Email: foreignaffairs@daltron.com.pg

      in which he must completely recant and retract all his malicious, baseless and damaging allegations that he had leveled against the Embassy and its diplomatic staff and this department in the last two years – fictitious allegations which he knew or ought to have known were baseless and were clearly intended to tarnish the reputation of the Embassy and that of the Government.

2. If he does not, within the prescribed time period, fully agree to comply with or satisfy the above conditions, then the Embassy should make known the Defendant's rejection of the settlement offer and it would be left for the Court to draw negative inferences from that which can then be factored into the Defendant's sentencing.

3. Even if the Defendant embraces the Embassy's settlement offer, I understand that that will only serve as a factor that the sentencing judge may take into account when determining the restitution orders and such others orders, including the nature of any penalty (and the length of any prison term) that the Court might impose on the Defendant.

4. Petition the Court (by, for instance, filing a victim impact statement or other statement as is deemed appropriate) to take into account and appreciate the magnitude of the damage that the Defendant has done to our nation's array of legitimate interests and the far-reaching ramifications of his fraud and criminal behavior for our nation's Foreign Service and the country's Public Service generally and ask the Court to sentence the Defendant to an appropriate prison term in addition to orders for restitution as the circumstances of this case demand as further explained below.

5. The Government takes the Defendant's crimes extremely seriously. We have dismissed him from the PNG Public Service precisely because of his misconduct and fraudulent behavior; threes include, but not limited to, improperly applying for a "Green Card" while still actively serving as a senior diplomat (the first active PNG diplomat to ever engage in such behavior); defying the Government's instructions to relocate himself to Headquarters (even after having improperly received the airfares for himself and his entire family); unauthorized stay in the United States with the intention of residing there permanently; misleading the Embassy into paying him unauthorized salary while planning *not* to join the department; and fraudulently siphoning off of public funds from the Embassy.

6. The Government cannot condone such acts of misconduct and fraud – which have led to a loss of morale among our country's serving diplomats and personnel in this Department and has set a dangerous and damaging precedent for our country's serving diplomats and our Foreign Service generally.

7. The almost US$100,000 that the Defendant illegally or improperly secured for his personal benefit does not include the legal costs of US$20,000 or more. His ill-gotten gains of almost US$100,000 equates to about K400, 000 (based on an historical exchange rate of $1.00 = K4.00). As you know, this represents the total salary of civil servant – someone of the Defendant's seniority in the PNG Public Service - for about 10 years. In addition, the loss the government and nation suffered from the Defendant's fraud is extremely serious, especially when you consider that the country's GDP per capita is US$855 (2005 est.), when 70% of our nation's almost 6 million people live in poverty, when most of our nation's social indicators are poor; and when the average government employee or private sector worker never will see that sort of money in his or her lifetime.

8. Thus, the Defendant seriously breached his fiduciary duties and responsibilities (as Acting Ambassador) at the time of his crimes and has thus seriously betrayed the solemn trust that the Government placed on him to lead the conduct of our foreign affairs through the Washington Embassy, one of our three most important diplomatic missions.

9. In summary, given the seriousness of the Defendant's fraud, the Embassy should (through your victim impact statement) petition the Court for a number of appropriate orders and remedies, including the following:

   a) that the Defendant be ordered to pay full restitution (including the Embassy's legal costs) as described above;

   b) that any penalty (arising from his criminal guilty plea) that is imposed on the Defendant should include doing time in a U.S. jail for an appropriate length of time in order to fit the circumstances of his crimes involving two counts of serious fraud perpetuated against the Embassy and an entire government and nation that trusted him;

   c) that the Defendant's string of serious misconduct which culminated in these crimes go beyond simply two counts of fraud to the betrayal of a sacred trust and confidence bestowed on him by an entire government and a nation of almost 6 million people; and

   d) that the prison term, if any, imposed on the Defendant (including orders for payment of full restitution) be adequate enough to demonstrate to PNG's diplomats serving in the United States and in other international capitals – who are following this case closely – that no PNG diplomat serving at any of our overseas diplomatic missions would engage in the kind of serious criminal schemes that the Defendant was engaged in and expect or hope to escape penalty thereby denying justice to the Government and people of PNG that the Defendant (or any defendant) has victimized.

Received Time Apr.18. 11:35PM

We rely on your judgment and advice of your lawyer to file an appropriate victim impact statement in Court so as to ensure that justice is served under these serious circumstances.

Yours sincerely

*[signature]*

**Gabriel K. Pepson**
Secretary



TELEPHONE: (202) 745-3680
FAX: (202) 745-3679
EMAIL: epaki@pngembassy.org
WEB SITE: www.pngembassy.org

1779 MASSACHUSETTS AVENUE, N.W.
SUITE 805
WASHINGTON, D.C. 20036

## EMBASSY OF PAPUA NEW GUINEA

*Office of the Ambassador*

---

## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| vs. | ) | Criminal No. 07-CR-037 |
| | ) | |
| MICHAEL, Graham | ) | |

### Declaration of Victim Losses

I, Evan J. Paki, the Ambassador of the Independent State of Papua New Guinea to the United States of America, located at 1779 Massachusetts Avenue, NW; Suite 805; Washington, D.C. 20036, state that the Embassy (representing the people and government of Papua New Guinea) is a victim in the above referenced case. I believe that the Embassy is entitled to restitution totaling at least **$110,804.92.**

The Embassy's specific losses as a result of this offense are summarized as follows:

1.  As set forth in the Criminal Information to which Mr. Michael pled guilty, in June 2002, Mr. Michael fraudulently and improperly caused the Embassy's Administrative Officer to pay him a check in the amount of **$25,900**. *See* Criminal Information, ¶¶ 6 & 7.

2.  As set forth in the Criminal Information to which Mr. Michael pled guilty, in August 2002, Mr. Michael fraudulently and improperly caused the Embassy's Administrative Officer to pay him a check in the amount of **$20,750**. *See id.*, ¶¶ 8-11.

3.  As set forth in the Criminal Information to which Mr. Michael pled guilty, in March 2004, Mr. Michael fraudulently and improperly caused the Embassy's Administrative Officer to pay him a check in the amount of **$23,402**. *See id.*, ¶¶ 12-14.

4.  In February 2004, after being recalled to Papua New Guinea, Mr. Michael requested a leave of absence with pay, purportedly to attend to selling his house, to arrange school transfers for his children, and to organize his personal effects so that he could return to Papua New Guinea to continue to serve the government as a foreign service officer in the Department of Foreign Affairs & Trade. In reliance on that representation, the Embassy

10461391.1

continued to pay Mr. Michael his salary between February and May, 2004, payments which totaled **$18,699.22**. In fact, however, Mr. Michael never intended to return to Papua New Guinea, but rather intended to stay in the United States pursuant to the "Green Card" he had improperly obtained in 2003. (By secretly obtaining a "Green Card" while still serving as Acting Ambassador at the Embassy, Mr. Michael committed serious breaches of Papua New Guinea's laws and regulations, including those governing the conduct of our country's diplomats, as a result of which he was later found guilt of misconduct and dismissed from our Public Service.)

5.  Similarly, in February 2004, Mr. Michael requested that the Embassy purchase air travel tickets for the purpose of repatriating him and his family. The Embassy did so at a cost of roughly $20,550. Rather than repatriate his family, however, Mr. Michael used one of those tickets to travel to Papua New Guinea for personal reasons. (He neither notified the government of his travel nor contacted the government during his visit to resolve the serious issues surrounding his misconduct arising from his receipt of unauthorized payments and his status as a "Green Card Holder" in the United States.) About one year later, when it became clear that Mr. Michael would not voluntarily return to Papua New Guinea, the government through the Embassy requested a refund from the travel agency. The Embassy recovered roughly $14,950 for the unused tickets, but could not recover the remaining **$5,599.70**, which represented the cost of Mr. Michael's personal travel.

6.  Between September 2005 and the present, as a direct result of the crimes to which Mr. Michael has pled guilty, the Embassy incurred attorney's fees in the amount of **$16,454** as part of its efforts to recover the funds and to cooperate with law enforcement. This amount does not include unbilled fees nor does it include the additional fees the Embassy will incur in seeking to recover the funds. Those fees are potentially substantial, particularly given Mr. Michael's continued refusal to engage in settlement discussions.

I declare, under penalty of perjury, and to the best of my knowledge, that the foregoing is true and correct.

_____
Ambassador Evan J. Paki

Executed on the 23rd day of April, 2007.

10461391.1



# DEPARTMENT OF FOREIGN AFFAIRS & TRADE
*Office of the Secretary*

05th March 2007

Mr. Graham Michael
31 Pinnacle Drive
Bunker Hill, WV
United States of America

Dear Mr. Michael,

I refer to your letter dated 18 November 2005 which sought to detail various allegations against our Embassy in Washington DC and our diplomats there and the staff of this Department and against the Papua New Guinea Government generally.

We have reviewed, investigated and examined each of your damaging allegations and have come to the final conclusion that all of your allegations are blatantly baseless, malicious, and defamatory against our diplomats in Washington DC and staff of this department and, in a general sense, against the Government. There is no doubt that your damaging and fictitious allegations have been manufactured knowingly and with malice and with a clear intention and fraudulent scheme to tarnish and damage the professional reputation of our Embassy and the good name and image of this department.

Our finding is that your motive is clear: that you have raised the allegations in the manner in which you did because of your desire or propensity to damage the positive reputation and image of the Embassy and its diplomatic staff and this department because – in your flawed opinion - we are responsible for the legal troubles that might beset you in the ongoing criminal investigations into your several counts of fraud perpetuated against our Embassy and the Government. We are, of course, *not* responsible for any crimes that you may have committed – you solely are responsible for your own actions.

Because of the ongoing criminal investigation of you by America's FBI and other U.S. prosecutorial authorities, we suggest that you refrain from any further baseless and damaging publications in order to avoid further legal troubles.

Yours sincerely,

Gabriel K. Pepson
Secretary

cc:   H E Mr. Evan Paki
      Ambassador (PNG Embassy, Washington DC, USA.)